(No. 55075.—

ROSEMARIE S. WALTER v. THE BOARD OF EDUCATION OF QUINCY SCHOOL DISTRICT NO. 172, Appellee (John Vernon Walter, Ex'r, Appellant).

*Opinion filed November 18, 1982.*

102

DeJong, Poltrock & Giampietro, of Chicago (Lawrence A. Poltrock, Gregory N. Freerksen, and Mildren F. Haggerty, of counsel), for appellant.

William J. Dieterich, of Quincy, for appellee.

JUSTICE CLARK delivered the opinion of the court:

On February 28, 1978, the plaintiff, Rosemarie S. Walter, brought this action for a writ of *mandamus* asking for reinstatement of her tenured teaching position with defendant, the board of education of Quincy School District No. 172, and asking for damages in the nature of back pay from the time of her dismissal. The circuit court of Adams County entered judgment for the defendant board of education. Notice of appeal was filed on August

20, 1980, but before the appellate court could hear the case, the plaintiff died in an automobile accident. The executor of plaintiff's estate filed a suggestion of death and motion for substitution of parties with the appellate court. A divided appellate court denied the motion, finding that the plaintiff's *mandamus* action abated with the plaintiff's death. 95 Ill. App. 3d 313.

The executor filed with this court a petition for leave to appeal along with a renewed motion for substitution of the estate of Rosemarie Walter as plaintiff in this action. We granted the executor's petition for leave to appeal (73 Ill. 2d R. 315).

The issues before this court are threefold: first, whether the damages portion of the plaintiff's *mandamus* action survives the plaintiff's death; second, if not, whether the executor should be allowed to amend the complaint; and third, if the damages portion of the *mandamus* action survives, whether the board of education failed to tender Rosemarie Walter a teaching position that the board was legally obligated to offer.

A writ of *mandamus* is issued as an exercise of judicial discretion only in those cases where the plaintiff can demonstrate a clear right to this extraordinary relief. (*White v. Board of Appeals* (1970), 45 Ill. 2d 378; *La Salle National Bank v. Village of Riverdale* (1959), 16 Ill. 2d 151.) Where an administrative officer or board has arbitrarily failed to act, *mandamus* will lie to compel that officer or board to perform a duty which the plaintiff is entitled to have performed. *Taylor v. State Board of Education* (1978), 56 Ill. App. 3d 387.

The majority of the appellate court stated that it felt "bound" by our decision in *People ex rel. McPherson v. Western Life Indemnity Co.* (1914), 261 Ill. 513, and concluded that the request for damages in the petition for *mandamus* was incidental to the request for reinstatement and therefore abated when the plaintiff died.

In *People ex rel. McPherson v. Western Life Indemnity Co.* (1914), 261 Ill. 513, John McPherson filed a petition for *mandamus* to compel the Western Life Indemnity Company to accept certain payments upon a life insurance policy issued by Western Life as premium payments. The petitioner wanted his membership restored and an order issued that the policy be maintained provided that the monetary payments were being made. McPherson won at trial and Western Life appealed. As the case was being appealed, the petitioner died.

The court in *McPherson* recognized that the *mandamus* action brought was an entirely personal one; *mandamus* was not referred to in the now-repealed statute on abatement (Hurd's Ill. Rev. Stat. 1903, ch. 1, pars. 1 through 26) as one that would survive; and there was no provision in the *mandamus* statute that provided for survival of the action upon the death of the petitioner.

After concluding that death operated as an abatement, the court went on to say: "In this case the main object of issuing the writ was to compel the appellants to restore the petitioner to membership in said insurance company and to keep and treat his policy or contract of insurance in force during his life. It is conceded by counsel for appellee that the only part of the prayer of the petition that could now be enforced would be to compel the appellants to accept and apply on the policy the payments of premium tendered to them before the death of McPherson. The acceptance of this money was a mere incident to restoring the original relator to his membership in the said insurance company and treating his policy as in force." (261 Ill. 513, 516.) What the appellees in McPherson requested was for the court to require acceptance of the premium payments so that the insurance would be reinstated and therefore effective at the time of the petitioner's death.

The plaintiff in the instant case, in filing the complaint for *mandamus* asked that the trial court declare her dis-

missal as a tenured teacher to be in violation of section 24—12 of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 24—12). The complaint sought reinstatement, "any and all actual and compensatory losses and damages" that arose out of the plaintiff's dismissal, and $10,000 in punitive damages.

The facts of this case are significantly different from *McPherson v. Western Life Indemnity Co. McPherson* does not control the outcome here. If the plaintiff had succeeded on the merits of her argument concerning the alleged failure on the part of the board of education to rehire her, compensatory damages for discharge could have been awarded in the amount of the salary she would have received from the time that the board failed to reemploy her until she would have been reinstated. Those damages which amount to a claim for back salary are not a mere incident to the complaint for reinstatement but constitute a separate claim that was properly brought as part of this *mandamus* action.

It is clear that while *mandamus* will not lie when the only claim asserted is for a breach of contract, an action for *mandamus* is appropriate when reinstatement is sought; and a claim for back salary can be brought as part of the action. Both claims are linked to one another, in that they are both based upon the same theory that there existed a right to reinstatement. See *Elevator Operators & Starters' Union, Local 117 v. Newman* (1947), 30 Cal. 2d 799, 807-08, 186 P.2d 1, 6.

Had Rosemarie Walter not sought reinstatement but rather only brought suit to recover damages, an action for breach of contract would have been in order. (See *Bessler v. Board of Education* (1977), 69 Ill. 2d 191.) Bessler, a nontenured teacher, brought an action for *mandamus* seeking reinstatement and back pay. This court held that plaintiff was not entitled to reinstatement but that she was entitled to damages for breach of contract. There is

no doubt that had the claim for damages been brought as an action in contract it would not have abated because such an action would "survive by the common law" (Ill. Rev. Stat. 1977, ch. 110½, par. 27—6). See also *Parkway Bank & Trust Co. v. LaVine* (1977), 45 Ill. App. 3d 497.

The plaintiff proceeded properly in bringing the original complaint as a *mandamus* action, and we believe the plaintiff's estate is entitled to be substituted in appealing that part of the *mandamus* action that does survive—that portion asking for damages in the form of back salary arising out of the contract between Rosemarie Walter and the board of education. See *Cain v. Stucker* (1946), 159 Pa. Super. 466, 48 A.2d 162; *State ex rel. Ake v. Kansas City* (1926), 221 Mo. App. 784, 288 S.W. 85; *Levitch v. Board of Education* (1926), 216 A.D. 391, 215 N.Y.S. 309, *rev'd on other grounds* (1926), 243 N.Y. 373, 153 N.E. 495; *People ex rel. Fairchild v. Commissioners of the Department of Fire & Buildings* (1887), 105 N.Y. 674, 12 N.E. 179.

The Survival Act is a remedial statute and is liberally construed in order to prevent abatement. (*McDaniel v. Bullard* (1966), 34 Ill. 2d 487.) It expressly allows the survival of that part of the *mandamus* action that would survive at common law—the claim for damages. In *Murphy v. Martin Oil Co.* (1974), 56 Ill. 2d 423, 428, this court said:

> " 'The rule of abatement has its roots in archaic conceptions of remedy which have long since lost their validity. The reason having ceased the rule is out of place and ought not to be perpetuated.' "

The issue of back salary from the time of her unlawful termination to the time of her death survives by virtue of the Survival Act, which states:

> "In addition to the actions which survive by the common law, the following also survive: *** actions to recover damages for an injury to real or personal property ***."
> Ill. Rev. Stat. 1977, ch. 110½, par. 27—6.

In view of our disposition of the first issue before us we find it unnecessary to consider whether the executor should be allowed to amend the complaint, since the complaint as to damages in the complaint for *mandamus* stands.

We believe that since the damages claim remains a live controversy the appeal on the merits of this case should proceed.

We now address the issue of whether the plaintiff was entitled to reinstatement. Since we properly have jurisdiction over this case and the issue has been fully briefed before us, we feel that in the interest of judicial economy we should make a ruling as to the merits of the claim before us. See *People ex rel. Pardridge v. Windes* (1916), 275 Ill. 108.

It is necessary to briefly recall the facts of Mrs. Walter's case. The plaintiff had been a teacher with the defendant board of education since 1959. She had attained tenure by virtue of her 19 years of satisfactory service as a speech therapist with the school district. On March 22, 1978, Mrs. Walter received a "Notice and Statement of Honorable Dismissal" from the defendant. The notice informed Mrs. Walter that her employment would terminate at the end of the 1977-78 school year because of a reduction in the number of teachers in the school system. At the same time three nontenured teachers, Sandra Mentesti, Mary Nelle Rokita and Billie Embree, were also honorably dismissed because of the staff reduction. On August 28, 1978, Quincy School District No. 172 rehired the three probationary teachers to teach in the title I reading program.

The plaintiff claimed that she was legally qualified to fill one of the positions that the probationary teachers were given, and that pursuant to section 24—12 of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 24—12) she should have been reemployed (in the capacity of a title I reading teacher in August of 1978) because of her tenured position. Mrs. Walter asserted that as a dismissed tenured teacher she had a right to have tendered to her any new teaching

position which she was legally qualified to teach. The pertinent part of the statute on which the plaintiff relied provides:

"If a teacher in contractual continued service is removed or dismissed as a result of a decision of the board to decrease the number of teachers employed by the board or to discontinue some particular type of teaching service, written notice shall be given the teacher by registered mail at least 60 days before the end of the school term, together with a statement of honorable dismissal and the reason therefor, and in all such cases the board shall first remove or dismiss all teachers who have not entered upon contractual continued service before removing or dismissing any teacher who has entered upon contractual continued service and who is legally qualified to hold a position currently held by a teacher who has not entered upon contractual continued service. Any teacher dismissed as a result of such decrease or discontinuance shall be paid all earned compensation on or before the third business day following the last day of pupil attendance in the regular school term. *If the board within 1 calendar year thereafter increases the number of teachers or reinstates the position so discontinued, the positions thereby becoming available shall be tendered to the teachers so removed or dismissed so far as they are legally qualified to hold such positions.*" (Emphasis added.) Ill. Rev. Stat. 1977, ch. 122, par. 24—12.

The defendant argues that because the plaintiff's speech-therapist position was not reinstated and the actual number of teachers employed by the board in the 1978-79 school year was less than the number employed in 1977-78, plaintiff's reinstatement was not required by section 24—12. The defendant's contention is contrary to *Bilek v. Board of Education* (1978), 61 Ill. App. 3d 323, 326, where the appellate court said that "[t]hough section 24—12 does not expressly deal with vacancies caused by attrition, the spirit of the Act requires that such vacancies be filled by qualified tenured teachers who have been honorably dismissed within the preceding calendar year, if possible. If the vacancies cannot be filled by the tenured teachers, then untenured teachers may

be hired."

We believe that the reasoning of *Bilek* is consistent with this court's holdings in *McNely v. Board of Education* (1956), 9 Ill. 2d 143, 147, and *Donahoo v. Board of Education* (1952), 413 Ill. 422, where the court has said that the primary purpose of the teachers' tenure law is to protect experienced, able teachers by assuring them that decisions as to their continued employment will be based upon merit and not partisan politics.

The reasoning of *Bilek* is persuasive and applicable here. Following the plaintiff's dismissal, positions became available; if Mrs. Walter was "legally qualified" she was entitled to reinstatement before the hiring of any probationary teachers. Thus, the determination of whether Mrs. Walter should have been reinstated is contingent upon whether she was "legally qualified" to fill the teaching position in August of 1978.

The court in *Lenard v. Board of Education* (1979), 74 Ill. 2d 260, 268-69, determined that teaching standards, "promulgated by the Superintendent [of Public Instruction (now the State Board of Education)] pursuant to authority delegated by the School Code, are to be incorporated into the meaning of the phrase 'legally qualified' as it appears in section 24—12 of the Code." The record clearly shows that under Circular Series A, No. 100, issued by the Superintendent in 1956, Mrs. Walter was authorized to teach reading on August 28, 1978. The plaintiff was not simply certified, but was legally qualified under the regulations in effect at the time.

State Board of Education, document No. 1, attempted to upgrade teacher qualifications by providing that more stringent requirements had to be met by elementary and junior high school teachers.

The document, dated October 1, 1977, provides:

"7—1 Minimum Requirements for Elementary Teachers
7—1.1 Each elementary teacher shall hold a valid certificate for the grade level to be taught.

Each elementary teacher shall have formal training in each basic instructional area to be taught. This regulation shall apply only to those individuals first assigned to an elementary position on or after September 1, 1978.

7—2 Minimum Requirements for Teachers of Junior High and Departmentalized Upper Elementary Grades

7—2.1 Eighteen semester hours in the area of major teaching assignment, including at least five semester hours in each course where subject matter areas are divided into two or more specific courses. This requirement also applies to teachers of the sixth, seventh, and/or eighth grade where the organizational pattern is in part or entirely departmentalized. When departmentalized in part, the requirement only applies to the departmentalized teachers.

This regulation will not apply to teachers who are employed in a departmentalized position prior to September 1, 1973. Teachers not meeting the requirements and having been assigned to a departmentalized teaching situation for the first time as of September 1, 1973, shall have five years to gain the necessary 18 semester hours.

7—2.2 By September 1, 1978, all teachers (except those employed prior to September 1, 1973) assigned departmentalized responsibility shall meet the 18-semester-hour requirement. This regulation applies only to the subject matter which comprises more than 50 percent of the instructional periods assigned to a teacher."

As of September 1, 1978, the plaintiff undeniably lacked the requisite upgraded qualifications for appointment. However, the three untenured teachers rehired in August of 1978 also failed to meet the requirements set forth in document No. 1. The qualifications of three probationary teachers—Mentesti, Rokita and Embree—were acceptable as legally qualified only because they were "grandfathered in": exceptions were made for those individuals presently employed in the teaching capacities in question who had been employed prior to September 1, 1978. It would appear that

this exemption was intended to protect teachers of proved ability and experience who were already in such positions prior to the effective date of the changes. Yet it is clear that it was only via this exemption that the three probationary teachers were deemed qualified.

The type 10 language arts certificate that the plaintiff held was proper certification to qualify her for one of the reading positions in August of 1978. Mr. James R. Johnson and Mr. Enno S. Lietz, who evaluate teacher qualifications for the State Board of Education, testified at trial that Mrs. Walter was legally qualified to teach as of August 28, 1978. Had Mrs. Walter been reappointed in August she would have been "grandfathered in" under the exemption clause of document No. 1. The defendant contends that because the probationary teachers were better qualified than Mrs. Walter to participate in the title I projects, it was proper action of the board of education not to reemploy Mrs. Walter as a reading teacher.

The defendant asserts that because the title I project proposal was approved by the defendant on May 17, 1978, by the regional superintendent on May 19, 1978, and by the State Superintendent of Education on August 2, 1978, it was therefore in effect at the time that Mentesti, Rokita and Embree were appointed on August 15, 1978, and was effective at the opening of school on August 28, 1978.

The title I projects are federally funded programs intended to help educationally disadvantaged students and require the annual submission of a detailed project proposal showing its objectives and operations to the State Superintendent of Education for his approval, which then authorizes the district to implement the project proposal. However, the title I project document does not fix the legal qualifications for reading teachers in the Quincy school system. There is no indication from the State Board of Education that any of the title I project proposals would be incorporated as requirements into the regulations (*i.e.,* circular series) that

constitute whether a reading teacher in Illinois is legally qualified.

The legislature vested the authority to determine "legal qualifications" in the State Board of Education (Ill. Rev. Stat. 1977, ch. 122, par. 2—3.25) and not the local school board. Section 24—12 does not confer discretion upon a local school board to terminate a tenured teacher it considers unqualified.

If the school board seeks to dismiss a tenured teacher because of a lack of qualifications, it has the discretion to do so under section 10—22.4 (Ill. Rev. Stat. 1977, ch. 122, par. 10—22.4: Dismissal of Teachers), provided that such a dismissal is accomplished by an administrative hearing as provided for in section 24—12 (Ill. Rev. Stat. 1977, ch. 122, par. 24—12). Mrs. Walter was legally qualified. She should have been reinstated in August of 1978. Because the damage portion of the *mandamus* action survives, the judgments of the appellate and circuit courts are reversed. We allow the motion of the executor to be substituted as plaintiff and we remand the cause to the circuit court with directions to allow the motion for reinstatement by the executor and to enter a judgment for damages in the amount of back pay due the plaintiff from the date she should have been reinstated until the date of her death.

*Judgments reversed; cause*
*remanded, with directions.*