HATTIE WATTS, Plaintiff-Appellee and Cross-Appellant, *v.* THE BOARD OF EDUCATION, SCHOOL DISTRICT NO. 189, Defendant and Third-Party Plaintiff-Appellant and Cross-Appellee (State Board of Education, Third-Party Defendant).

Fifth District   No. 83—180

Opinion filed June 18, 1984.—Rehearing denied July 18, 1984.

Edward L. Welch, of Edwardsville, for appellant.

John W. Leskera and William L. Berry, both of Dunham, Boman & Leskera, of East St. Louis, for appellee.

JUSTICE JONES delivered the opinion of the court:

This appeal and cross-appeal concern section 24—12 of the School Code (Ill. Rev. Stat. 1979, ch. 122, par. 24—12), relating to the removal or dismissal of teachers in contractual continued service. The controversy focuses on the requirement of section 24—12 that the State Board provide, within 10 days after receiving notice of hearing, a list of five prospective, impartial hearing officers. Section 24—12 provides in pertinent part:

"If a dismissal or removal is sought for *** cause ***, the board must first approve a motion containing specific charges by a majority vote of all its members. Unless the teacher within 20 days requests in writing of the board that no hearing be scheduled, the board shall schedule a hearing on those charges before a disinterested hearing officer on a date no less than 30 nor more than 60 days after the enactment of the motion. Written notice of such charges shall be served upon the teacher at least 21 days before the hearing date. Such notice shall contain a bill of particulars. The secretary of the school board shall forward a copy of the notice to the State Board of Education. Within 10 days after receiving this notice of hearing, the State Board of Education shall provide a list of 5 prospective, impartial hearing officers. Each person on the list must be accredited

by a national arbitration organization. No one on the list may be a resident of the school district. The Board and the teacher or their legal representatives within 5 days shall alternately strike one name from the list until only one name remains. The teacher shall have the right to proceed first with the striking. *** The hearing officer shall hold a hearing and render a final decision." Ill. Rev. Stat. 1979, ch. 122, par. 24—12.

The plaintiff, Hattie Watts, a tenured teacher, was advised in a letter dated July 17, 1979, of the motion of the defendant, the Board of Education of School District 189, that she be dismissed for cause. The defendant scheduled a hearing on September 6, 1979, at 10 a.m. The plaintiff received the notice of hearing and bill of particulars on August 14, 1979. A copy of the notice of hearing reached the offices of the Illinois State Board of Education (hereafter referred to as State Board) on August 13, 1979, but the copy of the notice was lost at those offices. On September 4, 1979, the defendant sent a duplicate of the notice to the State Board and notified the plaintiff and the State Board that the hearing had been rescheduled on September 14, 1979, at 10 a.m. On or about September 5, 1979, the State Board sent a list of five prospective hearing officers. Counsel for defendant received the list on September 7, 1979, and counsel for plaintiff received the list on September 11, 1979. The following day counsel for plaintiff and defendant met to select a hearing officer for the hearing from the list of names submitted. At that time, apparently, counsel for plaintiff determined that one of the five prospective hearing officers on the list was deceased. Although the following fact is not included in the parties' stipulation of facts, it is undisputed that counsel for defendant agreed to strike, as one of defendant's two "strikes," the name of the deceased prospective hearing officer listed. According to the stipulation of facts, "plaintiff's attorney declined to proceed with the selection until five available arbitrators were provided." On September 17, 1979, counsel for defendant received from the State Board the name of a substitute, and on September 18, 1979, counsel for plaintiff received the name of the substitute. By letter dated September 17, 1979, the defendant advised the plaintiff that it was ready to proceed with the selection of the hearing officer, achieved by the striking of four names on the list of five. However, plaintiff declined to proceed with the selection of the hearing officer and on September 21, 1979, in the circuit court of St. Clair County filed a petition for a writ of *mandamus* against defendant ordering reinstatement, back pay, and withdrawal of the "Notice of Charges and Dismissal dated July 17, 1979 and to be further barred from action on that Notice."

In the petition for writ of *mandamus* the plaintiff sought also attorney fees and costs and entry of "such other Orders and [granting of] such relief as justice may require." Defendant subsequently filed a third-party complaint against the State Board.

Plaintiff moved for summary judgment. In an order filed March 9, 1981, the trial court denied the motion, finding "that plaintiff was not deprived of a substantial right or prejudiced by acts or omissions of either defendant." Thereafter, by letter dated June 26, 1981, a copy of which is included as Exhibit O of the stipulation of facts, the plaintiff, through her attorney, asked that she be "given a hearing on the Notice of Dismissal previously filed by District 189." By letter dated June 29, 1981, the defendant advised the plaintiff that it would consider her request at its meeting of July 20, 1981. In a letter dated July 9, 1981, included as Exhibit Q in the stipulation of facts, counsel for the State Board responded to a letter of plaintiff's counsel dated June 26, 1981, in which counsel for plaintiff had requested "that the State Board of Education submit five prospective arbitrators 'as required by the Illinois School Code.' " Counsel for the State Board expressed the view that the State Board's obligation to provide a list of five prospective hearing officers does not arise until the secretary of a local school board forwards to the State Board written notice of a charge against a particular teacher. Counsel for the State Board was of the opinion that the State Board was not authorized by statute to act as plaintiff had requested. In a letter dated August 11, 1981, counsel for defendant notified counsel for plaintiff that the defendant had voted to deny the hearing plaintiff had requested.

In August of 1981 the motions for summary judgment of the defendant and third-party defendant were denied by the trial court. In October of 1981, with leave of court, the plaintiff filed an amended complaint for a writ of *mandamus*, in the first count of which the plaintiff sought what she had sought initially, that is, reinstatement, back pay, withdrawal of the notice of charges and dismissal dated July 17, 1979, with the defendant to be "further barred from action on that Notice," attorney fees and costs, and entry of "such other Orders and [granting of] such relief as justice may require." In the second count of the amended complaint for a writ of *mandamus*, the plaintiff sought an order,

"in the alternative to its prayer for recovery in Count I, as follows:

a) Compelling defendant to direct its Secretary to request the State Board of Education of Illinois to submit the names of five (5) potential arbitrators as required in the Illinois Revised Stat-

utes;

b) To proceed with the scheduling of a hearing on the Notice of Dismissal prepared and forwarded by defendant."

Following a hearing at which no evidence was taken, the parties having stipulated to the facts, in an order filed December 18, 1982, the trial court entered judgment in favor of the defendant and against the plaintiff as to count I except subparagraph (e) thereof, that is, the prayer for the court "[t]o enter such other Orders and grant such relief as justice may require." The trial court found and ordered as follows:

"iii) That there are conclusions in the stipulation herein that evidence which would have been produced at a September, 1979 hearing is now stale. However, there is no evidence in the stipulation that any evidence which would have been produced in 1979 is no longer available due to the passage of time, lapse of memory, or otherwise.

It is therefore ordered that School District 189 contact the State Board of Education immediately to determine whether or not the list of five arbitrators ultimately tendered in September of 1979 is still up to date and useable. If such is the case, then the parties herein are to complete the striking of names on such list within ten days of the date of this order. If the State Board advises that the list is not useable, then the State Board shall supply the parties with a new list within ten days of this date, and the parties thereafter to complete the striking of names within ten days of receipt of the new list.

The hearing officer so selected shall set a hearing date as soon as possible, but in no case later than forty-five (45) days of his selection."

As to count II the trial court found that the granting of the plaintiff's prayer for defendant to direct its secretary to request the State Board to submit the names of five arbitrators would be unnecessary "as there is still outstanding from September of 1979 the names of five potential arbitrators." With respect of subparagraph (b) of the plaintiff's prayer in count II, the trial court stated, "It would appear that, since more than 60 days has passed from the date of [the motion for dismissal], the authority for setting a hearing date would be vested in the hearing officer," rather than in the defendant. For these reasons the trial court, as to count II, entered judgment in favor of the defendant and against the plaintiff.

Upon the defendant's motion to reconsider, the trial court in an order entered on February 14, 1983, dismissed count II of the

amended complaint and ordered

"the issuance of a Writ of Mandamus with respect to Count I only insofar as directing the defendant, School District No. 189, to perform its statutory duty of participating in the selection of an arbitrator to hear the merits of the plaintiff's claim that she was wrongfully terminated by defendant, School District No. 189."

From this order the defendant has appealed, praying that this court "reverse" the order. The plaintiff has cross-appealed, praying that we reverse the order insofar as it denied the prayer for writ of *mandamus* for reinstatement. The State Board takes no part in the appeal.

The plaintiff contends that the procedural requirements set forth in section 24—12 are jurisdictional and that failure to comply strictly with those procedural requirements "divests the local board of education, the hearing officer, and the State Board of Education of jurisdiction" to consider the dismissal of a tenured teacher. Hence, plaintiff maintains, reinstatement together with compensation in the amount of lost salary must be accorded her. Plaintiff takes the position that the statute requires the hearing to have been held, and not merely to have been scheduled, during a time not less than 30 nor more than 60 days after the approval of the board's motion for dismissal. Since the hearing was scheduled but not held during that time, plaintiff argues that once 60 days had passed from the time the board approved the motion for dismissal on July 17, 1979, the defendant lacked jurisdiction to proceed with the selection of the hearing officer, beyond, apparently, September 15, 1979. The plaintiff argues further that the State Board's failure to provide a list of five living prospective, impartial hearing officers within 10 days of receiving the notice of hearing similarly rendered the defendant without authority to proceed with the selection of a hearing officer. The issue of jurisdiction and the arguments advanced by the parties with respect to that issue apply to both the direct appeal and the cross-appeal.

The plaintiff relies heavily on *Neal v. Board of Education* (1977), 56 Ill. App. 3d 10, 371 N.E.2d 869, and *Smith v. Board of Education* (1979), 75 Ill. App. 3d 186, 394 N.E.2d 41, both of which, however, involved section 24—12 prior to its amendment in 1975 to provide for a hearing, no longer by the local board of education, but by an independent hearing officer. The statute involved in *Neal* and *Smith* provided in pertinent part:

"If the dismissal or removal is for any other reason or cause it does not become effective until approved by a majority vote of all members of the board upon specific charges and after a

hearing, if a hearing is requested in writing by the teacher within 10 days after the service of notice as herein provided. Written notice of such charges shall be served upon him at least 60 days before the effective date of his dismissal or removal. *** The effective date of the dismissal or removal shall be after November 1 and before the close of the school term. *The hearing shall be held and the decision rendered before the effective date of dismissal or removal ***."* (Emphasis added.) (Ill. Rev. Stat. 1973, ch. 122, par. 24—12.)

In *Neal* we held that the section "in clear and unambiguous language mandates that the dismissal must be at least 60 days after the service of the notice, after a hearing is requested, and between November 1 and the close of the school term." (*Neal v. Board of Education* (1977), 56 Ill. App. 3d 10, 12-13, 371 N.E.2d 869, 872.) In *Neal* the board had sent the teacher a notice of charges and dismissal on March 27, 1975, notifying her of her dismissal, effective immediately, for cause. The hearing was not held until September 2, 1975. Accordingly, we found that the plaintiff had been dismissed in a manner violating the statutory time requirements for dismissal mandated by section 24—12 and that the dismissal was void. In *Smith*, in which the board did not hold a hearing prior to the end of the school term in question or at any time thereafter, we held that the board had the duty to hold the hearing before the close of the school term for the school year in question. Because of the board's failure to do so, the writ of *mandamus* for reinstatement of the teacher was properly issued. In both *Neal* and *Smith* we stated that under the School Code a tenured teacher can be dismissed for cause, but the dismissal can be accomplished only by following the procedures prescribed in section 24—12.

The plaintiff relies also upon *Carter v. State Board of Education* (1980), 90 Ill. App. 3d 1042, 414 N.E.2d 153, which concerns section 34—85 of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 34—85), relating to schools in Chicago. As was indicated in *Chicago Teachers Union v. Board of Education* (1973), 14 Ill. App. 3d 154, 301 N.E.2d 833, the requirements set forth in section 24—12 apply to schools outside Chicago and do not apply to the schools of Chicago, which are covered by article 34 of the School Code. In the same way, the requirements set forth in section 34—85 apply to schools in Chicago and do not apply to schools outside Chicago. Consequently, *Carter* does not apply to the case at bar.

■ The purpose of the amendment to section 24—12 requiring an independent hearing officer is to avoid inequities that may result from a local school board's hearing and deciding a case in which the board

had already made an initial decision to discipline the teacher, having already passed a motion containing specific charges against the teacher. (*Craddock v. Board of Education* (1979), 76 Ill. App. 3d 43, 391 N.E.2d 1059.) In *Johnson v. Board of Education* (1981), 85 Ill. 2d 338, 344, 423 N.E.2d 903, 906, which presented a question concerning the dismissal of a second-term probationary teacher, the supreme court recently had occasion to comment upon the intent of the legislature in enacting section 24—11 (Ill. Rev. Stat. 1977, ch. 122, par. 24—11), relating to contractual continued service of teachers, and section 24—12, with which we are here concerned:

> "One objective of teacher tenure is 'to assure continuous service on the part of teachers of ability and experience.' (*Lenard v. Board of Education* (1979), 74 Ill. 2d 260, 268.) The tenure system is, we believe, intended to provide continuity and stability for students; provide some degree of job security, thus affording teachers the ability to pursue a career free from arbitrary hiring and firing; attract teachers of high quality; and retain experienced teachers. Since, however, the statutes create liabilities where none would otherwise exist, they must be strictly construed in order not to unduly interfere with the responsibility of local boards to efficiently operate the educational systems. *Illinois Education Association Local Community High School District 218 v. Board of Education* (1975), 62 Ill. 2d 127." *Johnson v. Board of Education* (1981), 85 Ill. 2d 338, 344.

As we stated, the amended statute expressly requires the board to "schedule" a hearing on the charges before a disinterested hearing officer on a date no less than 30 nor more than 60 days after the enactment of the motion for dismissal. The board must serve notice upon the teacher at least 21 days before the date of the hearing date, and, at no specified time, forward a copy of the notice to the State Board, which is to provide, within 10 days of the receipt of the copy of the notice, a list of five prospective, impartial hearing officers. Within five days the local board and the teacher, or his or her legal representative, are to strike four of the five names from the list in order to ascertain the name of the hearing officer who "shall hold a hearing and render a final decision." In order to select an impartial hearing officer, the statute implicitly requires a certain amount of interaction on the part of several persons and entities, including the local board, the State Board, the teacher himself or herself, or his or her legal representative, as well as the impartial hearing officer who is ultimately chosen. The logistics have necessarily become somewhat

more complicated, compared with the local board's scheduling and conducting the hearing, as happened prior to amendment. The statute specifies no time by which the hearing officer is to hold the hearing or to render a final decision. The legislature has provided a time frame for the selection of the hearing officer in which his or her name might not be known until but a few days before the expiration of the 60-day period following enactment by the local board of the motion for dismissal. Selection of the hearing officer as late in the 60-day period as the legislature permits may well mean that the schedule of the hearing officer chosen would not permit him or her actually to hold the hearing within the days remaining in the 60-day period. According to the plaintiff's analysis, a teacher would have to be reinstated, for lack of jurisdiction, each time a hearing officer so selected could not hold the hearing within the amount of time remaining, however short. We do not think that the legislature intended such a result.

■ We find the observation of the supreme court in *Donahoo v. Board of Education* (1952), 413 Ill. 422, 426, 109 N.E.2d 787, 789, quoted by us in *Neal v. Board of Education* (1977), 56 Ill. App. 3d 10, 13, 371 N.E.2d 869, 872, of equal force here:

"The province of the courts is not to legislate but to interpret. We cannot read out of the statute words which the legislature has placed therein any more than we can read into the statute words which are not within the manifest intention of the legislature as determined by the statute itself."

The need for and wish of the legislature for a prompt hearing before an impartial hearing officer on charges against a tenured teacher is plain. That purpose, however, would not be defeated by the failure of the State Board to provide a list of five prospective, impartial hearing officers precisely within the 10-day period. Conceivably such a delay would cause no delay at all in the holding of the hearing as scheduled. Conceivably the schedule of the hearing officer selected would necessitate a continuance of the hearing scheduled by the local board until some time after the expiration of the 60-day period. We doubt that the legislature would require the work of compliance with a procedure as elaborate as the one provided here to go for nought because of an almost inevitable and predictable scheduling conflict. The interests of no one, neither the school board, nor the teaching profession, nor the general public, would be served by such an interpretation.

■ Therefore, we must disagree with the plaintiff that the legislature intended that the failure to provide the list of five prospective hearing officers within the 10-day period or the failure to hold the hearing within the 60-day period would bar the holding of the hearing

at all. We conclude that the legislature intended the local school board to schedule the hearing within the 60-day period, as the statute specifies and as was done here, and did not intend that the hearing would have actually to be held by the independent hearing officer within that period of time or not at all. That being the case, the defendant did not lack jurisdiction to continue with the selection of the hearing officer, and the trial court correctly denied the plaintiff's prayer for reinstatement in count I of her amended complaint for a writ of *mandamus*. Hence, the plaintiff cannot prevail as to her cross-appeal.

■■ ■ Before we turn to a consideration of the relief the trial court granted to the plaintiff, namely, the issuance of a writ of *mandamus* directing the defendant to participate in the selection of an arbitrator, we feel constrained to say that the proceedings of this case at the trial level and on appeal have been accompanied by considerable procedural drift. Although the plaintiff did not in her complaint for writ of *mandamus* or in count I of her amended complaint therefor expressly challenge the jurisdiction of the board, she did make such a challenge implicitly by seeking a writ of *mandamus* for reinstatement and back pay. We note that a party need not exhaust his or her administrative remedies before he or she may challenge the jurisdiction of an administrative agency. (*Sherman v. Board of Fire & Police Commissioners* (1982), 111 Ill. App. 3d 1001, 445 N.E.2d 1; *Head-On Collision Line, Inc. v. Kirk* (1976), 36 Ill. App. 3d 263, 343 N.E.2d 534; *Horan v. Foley* (1963), 39 Ill. App. 2d 458, 188 N.E.2d 877.) Thus, it was not necessary that the plaintiff exhaust her administrative remedies before challenging the jurisdiction of the board. However, we likewise note that the plaintiff could have participated in the selection of the arbitrator and in the hearing on the merits of her dismissal but still could have challenged the jurisdiction of the board either at the same time, through a complaint for writ of *mandamus* for reinstatement, or at a later time, upon judicial review. Certainly the defendant expressed great willingness and determination to proceed with the hearing on the merits, being willing, initially, to sacrifice one of its own two "strikes" by striking the name of the deceased person on the list of five names and, later, obtaining the name of a substitute from the State Board after the plaintiff expressed an unwillingness to allow the defendant to strike the name of the deceased arbitrator. The plaintiff, had she not arbitrarily chosen not to do so, could have availed herself of a prompt hearing on the merits before an independent hearing officer with relatively little expense to herself and no prejudice to her jurisdictional challenge. As we now know, plaintiff erred in her assessment of the defendant's want of jurisdic-

tion to proceed with the selection of a hearing officer, and although she need not have exhausted her administrative remedies in order to challenge the board's jurisdiction, we do not think that she should, several years after the events complained of, be allowed to resume a process she chose arbitrarily to abandon when the fairness of the proceeding was, because of its proximity in time to those events, most nearly assured to all concerned. Although the plaintiff did undertake to resume the selection of a hearing officer in June of 1981, almost two years after her refusal to proceed with that selection, as opposed to the delay of nearly five years that has by now occurred, we notice that the plaintiff made overtures to continue the selection process only after her motion for summary judgment had been denied and she had apparently begun to fear that she might not prevail in her implicit jurisdictional attack. The plaintiff, who erred in her assessment of the board's lack of jurisdiction and who arbitrarily refused to participate further in the administrative process at the time most advantageous to all concerned, must now accept the consequence of her arbitrary refusal and abandonment of the administrative process.

For these reasons the judgment of the trial court is reversed as to the issuance of the writ of *mandamus* directing the defendant to participate in the selection of an arbitrator and is otherwise affirmed.

Reversed in part; affirmed in part.

WELCH, P.J., and HARRISON, J., concur.