884

JOLYON W. SCHAFER, Plaintiff-Appellee, v. THE BOARD OF EDUCA-
TION OF ARLINGTON HEIGHTS SCHOOL DISTRICT NO. 25, Defend-
ant-Appellant.

First District (4th Division)   No. 84—2157

Opinion filed June 30, 1987.

John H. Hager and John M. Collins, Jr., both of Cowen, Crowley & Hager, of Chicago, for appellant.

Lawrence Jay Weiner and Joan M. Eagle, both of Weiner, Neuman & Spak, of Chicago, for appellee.

PRESIDING JUSTICE McMORROW delivered the opinion of the court:

The board of education of Arlington Heights School District No. 25 (the board) appeals from the order of the circuit court of Cook County which directed the board to reinstate Jolyon Schafer (Schafer) to his tenured position as a teacher with the board. Under the terms of the board's contract with the Arlington Teachers' Association in effect when Schafer was a tenured teacher, the board could honorably discharge a tenured teacher during a reduction in force where the teacher was "discernibly different." The board honorably discharged Schafer, following a hearing, on the ground that Schafer's teaching skills evidenced such "discernible differences." Schafer filed an action challenging his discharge. The trial court reviewed the evidence presented at the board's hearing, determined that the board actually discharged Schafer for "incompetence," and ordered his reinstatement as a tenured teacher.

On appeal, the board argues that section 24–12 of the School Code (Ill. Rev. Stat. 1981, ch. 122, par. 24–12) permits a board's contract

with a teacher association to establish an alternative sequence of dismissal other than inverse seniority during a reduction in force. The board contends that its agreement with the Arlington Teachers' Association, which recognized "discernible differences" as an alternative sequence of dismissal, is in accord with this provision of the School Code, and that Schafer was therefore properly dismissed on this basis by the board. The board also claims that the evidence presented at its hearing supported the board's determination that Schafer was "discernibly different."

We affirm.

BACKGROUND

When Schafer was discharged in 1982, the board's actions were governed by article X—D of the professional agreement between the board and the Arlington Teachers' Association. If a reduction in force is necessary, article X—D permits the board to honorably discharge a tenured teacher with a greater number of years of continuous service after the board has undertaken a composite review of the teacher's experience, training, performance, and "potential for success." Where this composite review indicates that the teacher has "discernible differences" in his teaching abilities, such that the teacher is not "the best qualified candidate" for a position, honorable discharge is considered appropriate under article X—D of the agreement.

Prior to his discharge, Schafer had been a tenured teacher with 16 years of continuous service. He was certified to teach social studies and language arts in grades 6 through 12, had 42 credits above a bachelor's degree, and had taught eighth grade social studies, language arts, reading and grammar. At the onset of the 1981-82 school year, the board changed Schafer's teaching assignment to seventh grade language arts and reading. During the course of the year, Schafer recognized that he was having some difficulties in instructing the class, and sought and was given certain aid in his instruction.

Schafer was initially chosen as a tenured teacher who "might" be discernibly different in the fall of that same school year. At that time, the board was considering a reduction in the number of teachers it employed, although it had not yet formally decided to do so. In early 1982, the board determined to institute a reduction in force. Schafer was designated as a tenured teacher who would be considered for honorable discharge for discernible differences pursuant to article X—D of the Arlington Teachers' Association agreement. The school board's director of administration and personnel, Dr. Joseph Ward (Ward), and the board's director of instruction, Dr. James Montgomery (Montgomery),

made several independent observations of Schafer's classroom performance at various times during the following month. Schafer was later advised of both individuals' recommendation that he be viewed as "discernibly different." He requested, and received, a hearing before the board, wherein he was represented by counsel.

At the hearing, the administrator presented evidence of the administrative staff's observations of Schafer's classroom performance during the 1981-82 school year. Ward and Montgomery testified to the procedure followed in order to reach their conclusion that Schafer was "discernibly different." This testimony established that the administration had looked at the past performance evaluations of other tenured teachers who were also qualified for Schafer's position, had fewer years of continuous service than did Schafer, and had not been previously suggested by any principal as "discernibly different." Of these other teachers, only one had a negative evaluation on a "minor problem" that had occurred six or seven years earlier.

Ward testified at the hearing that of the four criteria specified in article X—D, past performance and potential for success were deemed more significant than training and experience. He stated that the final basis for concluding that Schafer was "discernibly different" was that "[t]here were no other teachers that had the same kind of problems in the classroom that Mr. Schafer had." Montgomery, who was in charge of the board's negotiating team which participated in the drafting of article X—D, also testified at the hearing that performance was "the key factor." He stated the purpose of the "discernibly different" standard was "to deal with the issue of teachers who, while qualified and doing an adequate kind of performance, just were not meeting the kinds of standards that exist in this School District community."

After the hearing, the board found Schafer to be "discernibly different" for two reasons. The board concluded that Schafer's "[t]eaching strategies and methods of communication do not properly motivate students." It also found that Schafer's "[t]eaching strategies and methods do not adequately present curriculum in ways conducive to student learning and understanding, for example *** [his] failure to use appropriate methods of instruction, and [his] failure to provide adequate teacher instruction preceding student assignments."

Schafer filed an action challenging his discharge, claiming, *inter alia*, that his dismissal contravened the requirements of section 24—12 of the School Code (Ill. Rev. Stat. 1981, ch. 122, par. 24—12). He later filed a motion for summary judgment, which the trial court granted following briefing and argument. In its oral pronouncements, the court noted that the record of the board's hearing demonstrated that the

board had discharged Schafer on the ground that the board considered him "incompetent." The board's timely appeal followed.

OPINION

On appeal, the board argues that Schafer was properly discharged for "discernible differences" in his teaching abilities. The board contends that section 24—12 of the School Code permits a teacher association's agreement with a board to provide for an alternative sequence, other than inverse seniority, for the discharge of tenured teachers during a reduction in force. The board maintains that article X—D of its contract with the Arlington Teachers' Association is in accord with section 24—12, because it provides for such an alternative sequence of dismissal of tenured teachers, that is, honorable discharge of a tenured teacher with a greater number of years of continuous service, where that teacher is "discernibly different."

■ It is well established that provisions of an act are to be interpreted according to their plain and ordinary meaning and in their overall context within the pertinent statute. (See, *e.g.*, *People v. Jordan* (1984), 103 Ill. 2d 192, 206-07, 469 N.E.2d 569; *Kozak v. Retirement Board of the Fireman's Annuity & Benefit Fund* (1983), 95 Ill. 2d 211, 216, 447 N.E.2d 394.) Section 24—12 permits a board to dismiss a tenured teacher without notice of charges, a period of remediation, and an impartial hearing before a disinterested hearing officer, where dismissal occurs "as a result of decision of the board to decrease the number of teachers employed by the board." (Ill. Rev. Stat. 1981, ch. 122, par. 24—12.) It also refers to such a reduction in force as an "economic necessity." (Ill. Rev. Stat. 1981, ch.122, par. 24—12.) If a board wishes to dismiss the tenured teacher for any reason or cause other than "economic necessity," the board must allow remediation if the teacher's deficiencies are remediable, approve charges against the teacher, provide notice thereof to the teacher, and schedule a hearing before an independent hearing officer. Ill. Rev. Stat. 1981, ch. 122, par. 24—12.

If a school board discharges a tenured teacher because of "economic necessity," the board generally must dismiss this teacher because the teacher has fewer years of continuous service than other tenured teachers (*i.e.*, inverse seniority). (Ill. Rev. Stat. 1981, ch. 122, par. 24—12.) Although a teacher association's contract with the school board may provide for an alternative sequence of dismissal other than inverse seniority, section 24—12 does not explain or define what alternative sequences of dismissal would be permissible.

■ ■ Where several words of similar meaning are grouped together, words that are more general in meaning are to be construed as

limited and qualified by accompanying words of more restrictive meaning. (See 2A A. Sutherland, Statutory Construction sec. 47.16, at 161 (4th ed. rev. 1984); see also, *e.g.*, *Page v. Corley Cos.* (1985), 131 Ill. App. 3d 56, 475 N.E.2d 571.) The number of years of continuous service held by a tenured teacher, *i.e.*, inverse seniority, is unrelated to the teacher's skills, abilities, or performance, since these deficiencies may be ground for dismissal for cause and are provided for separately in section 24—12 (Ill. Rev. Stat. 1981, ch. 122, par. 24—12). In view of the nature of this limitation of inverse seniority upon a board's authority, during a reduction in force, to dismiss a tenured teacher without notice of charges, a period of remediation, and an independent hearing, we conclude that an alternative sequence of dismissal permissible under section 24—12 must bear the same characteristics as inverse seniority. Thus, an alternative sequence of dismissal pursuant to section 24—12 established in a teacher association's agreement with a school board must also be founded upon objectively verifiable criteria unrelated to a teacher's skills, abilities, or performance.

■ Article X—D of the Arlington Teachers' Association agreement with the board permits the board, during a reduction in force, to honorably discharge a tenured teacher with a greater number of years of continuous service without affording that teacher a period of remediation, notice of charges, and an impartial hearing, where a composite review of the teacher's experience, training, performance, and "potential for success" indicates that the teacher is "discernibly different" and "not the best qualified candidate" for the teacher's position. The factors delineated in article X—D are not objectively verifiable criteria unrelated to a teacher's skills, abilities, or performance. As a result, we determine that article X—D of the Arlington Teachers' Association agreement with the board, to the extent that it attempts to establish "discernible differences" in a teacher's qualifications as an alternative sequence of dismissal other than inverse seniority during a reduction in force, is in conflict with section 24—12 of the School Code. Accordingly we conclude that Schafer was not properly dismissed on this basis.

The board maintains that article X—D of the Arlington Teachers' Association agreement should be upheld because of its beneficial and salutary goals. The board contends that a school board faced with the "economic necessity" of a reduction in force should be afforded the authority to honorably discharge, without notice of charges, a period of remediation, and an independent hearing, those tenured teachers with greater years of service who, although "competent," are not the "best qualified candidates" for the positions held by those teachers.

■ Whatever the wisdom or merit of the board's claim, the Illinois

legislature has not seen fit to adopt the board's view in section 24—12. The School Code currently permits a school board to dismiss a tenured teacher "whenever, in [the board's] opinion, the interests of the schools require [the teacher's dismissal]." (Ill. Rev. Stat. 1981, ch. 122, par. 10—22.4.) However, a board's dismissal of a tenured teacher under these circumstances must be preceded by a period of remediation, notice of charges, and an impartial hearing before a disinterested hearing officer, in accordance with section 24—12. (See Ill. Rev. Stat. 1981, ch. 122, par. 24—12.) Consequently, the consideration that the best interests of the schools would be served under conditions such as those advanced by the board here does not, under section 24—12, excuse the board's responsibility to adhere to the procedural guarantees provided a tenured teacher in section 24—12. There is nothing in section 24—12 that authorizes a board to dispense with the rights of a tenured teacher whose discharge is based upon concerns relating to the teacher's skills, abilities, or performance, merely because the board wishes to discharge the teacher when the board is undergoing the fortuitous circumstance of a reduction in force of the number of teachers it employs.

We note that the board's decision, and the manner in which that decision was reached, closely paralleled the procedures in force under the former relevant portion of section 24—12 of the School Code regarding dismissal for cause following a hearing before a school board. (See Ill. Rev. Stat. 1973, ch. 122, par. 24—12; see, *e.g., Aulwurm v. Board of Education* (1977), 67 Ill. 2d 434, 367 N.E.2d 1337; *Gilliland v. Board of Education* (1977), 67 Ill. 2d 143, 365 N.E.2d 322; see also *Watts v. Board of Education* (1984), 125 Ill. App. 3d 532, 466 N.E.2d 311.) We do not interpret the current language of section 24—12 to allow a board's reversion to that former procedure of teacher discharge for cause, during a period when budgetary or enrollment concerns call for a reduction in force.

Given these considerations, we decline to adopt the board's proposed interpretation of section 24—12. We conclude that article X—D of the Arlington Teachers' Association agreement conflicts with section 24—12, and does not establish an acceptable alternative sequence of dismissal, other than inverse seniority, during a reduction in force.

■ In the alternative, we also concur in the decision of the trial court that Schafer was effectively discharged because the board perceived him to be "incompetent." The record in the instant cause shows that the administrator's case against Schafer relied almost exclusively upon the quality of Schafer's performance during the 1981-82 school year. The memoranda of the administrative personnel who observed Schafer's classroom performance stated in detail the perceived "defi-

ciencies" in Schafer's teaching abilities. The board's letter to Schafer, attached to the board's discharge resolution, similarly stated the board's determinations of the inadequacies in Schafer's teaching skills. As both Ward and Montgomery testified, Schafer was deemed to be "discernibly different" because he did not possess, according to their judgments, the same level and degree of teaching skills as did other teachers in the district.

Essentially Schafer was found to be "substandard" for the area. We are unable to perceive how the conclusion that Schafer was "inadequate" in comparison to other teachers in the district can be logically distinguished from a finding that Schafer was "incompetent" in comparison to other teachers. The administration's argument that Schafer was "discernibly different" was founded on one central premise: "[t]here were no other teachers that had the same kind of problems in the classroom that Mr. Schafer had." We conclude that Schafer was discharged because of a finding of incompetence, irrespective of the characterization given by the board to its determination. See generally Ill. Rev. Stat. 1981, ch. 122, par. 10—22.4; *McBroom v. Board of Education* (1986), 144 Ill. App. 3d 463, 494 N.E.2d 1191; *Board of Education v. Epstein* (1979), 72 Ill. App. 3d 723, 391 N.E.2d 114.

Section 24—12 of the School Code sets forth the procedures that must be followed where a board seeks to dismiss a tenured teacher because of incompetence. This procedure includes a warning, an opportunity to remedy perceived deficiencies, and an impartial hearing before an independent hearing officer. (Ill. Rev. Stat. 1981, ch. 122, par. 24—12.) None of these procedures was accorded to Schafer in the case at bar. As a result, he was wrongfully discharged by the board, and the trial court properly ordered his reinstatement. See generally *Birk v. Board of Education* (1984), 104 Ill. 2d 252, 472 N.E.2d 407; *Walter v. Board of Education* (1982), 93 Ill. 2d 101, 442 N.E.2d 870; *Pennell v. Board of Education* (1985), 137 Ill. App. 3d 139, 484 N.E.2d 445.

For the reasons stated, the order of the circuit court is affirmed.

Affirmed.

LINN and JOHNSON, JJ., concur.